## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| LESLIE M. C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 20-CV-27-JFJ |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

### OPINION AND ORDER

Plaintiff Leslie M. C. seeks judicial review of the decision of the Commissioner of the Social Security Administration ("SSA") denying her claims for disability benefits under Titles II and XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 416(i), 423, and 1382c(a)(3).   In accordance with 28 U.S.C. § 636(c)(1) & (3), the parties have consented to proceed before a United States Magistrate Judge.   For the reasons explained below, the Court affirms the Commissioner's decision denying benefits.   Any appeal of this decision will be directly to the Tenth Circuit Court of Appeals.

### I.      General Legal Standards and Standard of Review

"Disabled" is defined under the Social Security Act as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).   A physical or mental impairment is an impairment "that results from anatomical, physiological, or psychological

---

[1] Effective July 9, 2021, pursuant to Federal Rule of Civil Procedure 25(d), Kilolo Kijakazi, Acting Commissioner of Social Security, is substituted as the defendant in this action.   No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). A medically determinable impairment must be established by "objective medical evidence," such as medical signs and laboratory findings, from an "acceptable medical source," such as a licensed and certified psychologist or licensed physician; the plaintiff's own "statement of symptoms, a diagnosis, or a medical opinion is not sufficient to establish the existence of an impairment(s)." 20 C.F.R. §§ 404.1521, 416.921. *See* 20 C.F.R. §§ 404.1502(a), 404.1513(a), 416.902(a), 416.913(a). A plaintiff is disabled under the Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A).

Social Security regulations implement a five-step sequential process to evaluate a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (explaining five steps and burden shifting process). To determine whether a claimant is disabled, the Commissioner inquires: (1) whether the claimant is currently working; (2) whether the claimant suffers from a severe impairment or combination of impairments; (3) whether the impairment meets an impairment listed in Appendix 1 of the relevant regulation; (4) considering the Commissioner's assessment of the claimant's residual functioning capacity ("RFC"), whether the impairment prevents the claimant from continuing her past relevant work; and (5) considering assessment of the RFC and other factors, whether the claimant can perform other types of work existing in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v). If a claimant satisfies her burden of proof as to the first four steps, the burden shifts to the Commissioner at step five to establish the claimant can perform other work in the

national economy.  *Williams*, 844 F.2d at 751.  "If a determination can be made at any of the steps that a plaintiff is or is not disabled, evaluation under a subsequent step is not necessary."  *Id.* at 750.

In reviewing a decision of the Commissioner, a United States District Court is limited to determining whether the Commissioner has applied the correct legal standards and whether the decision is supported by substantial evidence.  *See Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  Substantial evidence is more than a scintilla but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *See id.* A court's review is based on the administrative record, and a court must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Id.*  A court may neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005).  Even if a court might have reached a different conclusion, the Commissioner's decision stands if it is supported by substantial evidence.  *See White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

## II.    Procedural History and the ALJ's Decision

On September 26, 2016, Plaintiff, then a 47-year-old female, applied for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act.  R. 14, 208-17.  Plaintiff alleges that she has been unable to work since March 26, 2016, due to multiple sclerosis and major depression.  R. 218-19, 241.  Plaintiff's claims for benefits were denied initially and on reconsideration.  R. 65-122.  ALJ James Stuart conducted an administrative hearing and issued a decision on December 31, 2018, denying benefits and finding Plaintiff not disabled.  R. 14-27, 33-64.  The Appeals Council denied review, so the ALJ's decision

represents the Commissioner's final decision for purposes of this appeal.   R. 1-3; 20 C.F.R. §§ 404.981, 416.1481.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her alleged onset date of March 26, 2016.  R. 16.  At step two, the ALJ found Plaintiff's multiple sclerosis (relapsing/remitting type), myelopathy, major depressive disorder, posttraumatic stress disorder, and anxiety disorder were severe impairments; her hypertension, hearing loss, and mild vision loss were nonsevere impairments; and her great toe fracture/partial amputation was not medically determinable.  R. 17.  At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment.  R. 17-19.  In assessing Plaintiff's mental impairments under the "paragraph B" criteria at step three, the ALJ referenced Plaintiff's function report as well as Dr. Kenny Paris' consultative mental status examination, and concluded that she had mild limitations in the mental functional areas of understanding, remembering, or applying information and adapting or managing oneself, and moderate limitations in interacting with others and concentrating, persisting, or maintaining pace. R. 17-18.

At step four, the ALJ summarized the claimant's hearing testimony, the medical source opinion evidence, and much of the medical evidence in the record.  R. 19-25.  He then found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b) with occasional stooping, crouching, crawling, kneeling, balancing, and climbing stairs/ramps.  R. 19.  As to environmental limitations, the ALJ found Plaintiff should not have exposure to unprotected heights, open flames, dangerous machinery or equipment, or other hazardous conditions, noting that not all moving machinery was dangerous, such as machinery where moving parts are shielded.  R. 19.  As to psychologically based limitations, the ALJ found

Plaintiff could perform unskilled work consisting of simple and routine tasks with routine supervision that require only that she understand, remember, and carry out simple instructions; could relate to supervisors and coworkers on a superficial and work related basis; could have occasional contact with the general public; and could adapt to a work situation.  R. 19.  Based on the testimony of a vocational expert ("VE"), the ALJ concluded that Plaintiff could not return to her past relevant work.  R. 25.

At step five, the ALJ concluded that Plaintiff could perform other occupations existing in significant numbers in the national economy, including assembler, accessories assembler, and inspector packer.  R. 25-26.  The ALJ determined the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles ("DOT").  R. 26.  Accordingly, the ALJ concluded Plaintiff was not disabled.  R. 26-27.

## III.    Issues

In challenging the Commissioner's denial of benefits, Plaintiff asserts the ALJ erred by: (1) failing to properly evaluate the opinion of consultative psychologist Dr. Kenny Paris, (2) failing to properly evaluate her subjective symptoms, and (3) relying on VE testimony in response to a hypothetical question that did not include all of her limitations.  ECF No. 13.

## IV.    Analysis

### A.    ALJ Properly Evaluated Dr. Paris' Opinion

Plaintiff first asserts the ALJ improperly rejected certain statements by Dr. Paris regarding her work-related abilities.  On February 6, 2017, Dr. Paris conducted a consultative mental status/diagnostic examination of Plaintiff.  R. 445-50.  Dr. Paris observed that Plaintiff's thoughts were organized, logical, and goal-directed and that she was able to stay focused on the exam.  R. 446.  He noted Plaintiff's score was average on several Wechsler Adult Intelligence Scale sections, including, *inter alia,* immediate recall, delayed recall, and concentration, and he estimated she had

average intellectual functioning.  R. 448-49.  Dr. Paris stated that Plaintiff's verbal skills, memory skills, and judgment appeared adequate, and that she did not have any significant problems with persistence and pace.  R. 448-49.  Based on Plaintiff's reported symptoms, history, and exam performance, Dr. Paris indicated "her ability to perform adequately in most job situations, handle the stress of a work setting and deal with supervisors or co-workers *is estimated to be below average*."  R. 449 (emphasis added).  In his written opinion, the ALJ summarized Dr. Paris' consultative examination findings.  R. 22.  He gave "some but not great weight" to Dr. Paris' statement that Plaintiff was "below average" at certain job-related functions, because this "estimate" by Dr. Paris could not "be transferred to vocationally relevant terms."  R. 22.  The ALJ then adopted Dr. Paris' diagnoses of major depressive disorder and anxiety disorder, found they were severe impairments, and included mental functional limitations in the RFC based, in part, on Dr. Paris' examination.  R. 17, 24-25.

The ALJ must evaluate every medical opinion in the record and discuss the weight assigned to such opinions.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c); *see also Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) ("An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional.").[2]  "An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion."  *Hamlin,* 365 F.3d at 1215 (cleaned up).  The relevant regulations list six factors the ALJ should consider when weighing a medical opinion: (1) the examining relationship; (2) the length, nature, and extent of the treatment relationship; (3) supportability of the opinion with relevant evidence; (4) consistency of the

---

[2] Because Plaintiff filed her applications for disability insurance benefits and supplemental security income benefits on September 26, 2016, 20 C.F.R. §§ 404.1527, 416.927 govern the ALJ's analysis of the medical source opinions.  20 C.F.R. §§ 404.1527, 416.927 ("For claims filed . . . before March 27, 2017, the rules in this section apply.").

opinion with the record as a whole; (5) specialization of the medical source; and (6) any other factors that may support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Upon review, the question for the reviewing court is whether the ALJ's decision contains specific reasons that make clear the weight assigned to the medical source opinion and the reasons for that weight. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012) (stating that the proper inquiry is whether the reviewing court "can follow the adjudicator's reasoning" and "can determine that correct legal standards have been applied").

The Court finds no error in the ALJ's analysis of Dr. Paris' opinion. As an initial matter, the Court disagrees with the premise of Plaintiff's argument that the ALJ "rejected" Dr. Paris' opinion regarding Plaintiff's mental limitations. This is not borne out in the ALJ's analysis. In assessing the RFC, the ALJ rejected the state agency psychologist's opinion that Plaintiff could perform semi-skilled work and further limited her to unskilled work. This limitation to unskilled work was based on Dr. Paris' consultative examination as well as treatment notes from providers at OU Physicians. R. 25. Thus, instead of rejecting Dr. Paris' opinion, the ALJ explained that he gave it some weight and accounted for it by including a limitation to unskilled work in Plaintiff's RFC. The ALJ gave due consideration to Dr. Paris' opinion, explained the weight given to portions of Dr. Paris' opinion, and ensured that the Court could follow his reasoning.

Further, Dr. Paris did not find that Plaintiff was precluded from performing adequately, handling stress, or dealing with supervisors or coworkers. Rather, he found Plaintiff's abilities were below average, which is entirely consistent with the ALJ's mental RFC assessment that accommodates working with supervisors, coworkers, and the general public, and limits Plaintiff to unskilled work. Accordingly, any error caused by the ALJ's statement that "below average" could not "be transferred to vocationally relevant terms" was a harmless error, as the Court finds

no inconsistency between Dr. Paris' opinion and the mental RFC imposed.  *See, e.g., Keyes-Zachary,* 695 F.3d at 1162-63 (finding the ALJ's failure to weigh a medical opinion harmless error where there was no inconsistency between the opinion and the RFC assessment).

The Court also rejects Plaintiff's assertion that the ALJ engaged in "picking and choosing" with respect to Dr. Paris' opinion.  An ALJ may not "pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability."  *Chapo v. Astrue,* 682 F.3d 1285, 1292 (10th Cir. 2012) (cleaned up).  This rule follows from the broader directive that "in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  *Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir. 1996) (cleaned up).  In this case, the ALJ did not simply "pick and choose" the evidence that was favorable to his position, but rather appropriately considered and weighed all the evidence, including Dr. Paris' opinion as set forth above.  Plaintiff fails to identify any evidence that undermines the ALJ's conclusion that she could perform a limited range of light, unskilled work.

**B.**      **ALJ's Consistency Analysis is Supported by Substantial Evidence**

Plaintiff contends that the ALJ erred in analyzing her subjective statements because he did not discuss all the factors in 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); improperly relied on her strong work history and coffee consumption to discount her subjective statements; and failed to link his consistency findings to the evidence in the record.

In evaluating a claimant's symptoms, the ALJ must determine whether the claimant's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record.  Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *7.  If they are consistent, then the ALJ "will determine that the individual's symptoms are more likely to reduce his or her capacities to perform work-related

activities." *Id.* If they are inconsistent, then the ALJ "will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities." *Id.* Factors the ALJ should consider in determining whether a claimant's pain is in fact disabling include the claimant's attempts to find relief and willingness to try any treatment prescribed; a claimant's regular contact with a doctor; the possibility that psychological disorders combine with physical problems; the claimant's daily activities; and the dosage, effectiveness, and side effects of the claimant's medication. *Keyes-Zachary*, 695 F.3d at 1167; *see also* SSR 16-3p at *7 (listing similar factors); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).[3]

Consistency findings are "peculiarly the province of the finder of fact," and courts should "not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (cleaned up). The ALJ's consistency findings "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.* However, so long as the ALJ sets forth the specific evidence he relies on in evaluating the consistency of the claimant's subjective complaints with other evidence, the ALJ "need not make a formalistic factor-by-factor recitation of the evidence." *Keyes-Zachary*, 695 F.3d at 1167 (cleaned up). "[C]ommon sense, not technical perfection, is [the reviewing court's] guide." *Id.*

The Court finds no error in the ALJ's consistency analysis. In this case, the ALJ found Plaintiff's allegations regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. 23. In support of his conclusion, the ALJ noted several inconsistencies between Plaintiff's subjective

---

[3] This evaluation, previously termed the "credibility" analysis, is now termed the "consistency" analysis. *See* SSR 16-3p (superseding SSR 96-7p). In practice, there is little substantive difference between a "consistency" and "credibility" analysis. *See Brownrigg v. Berryhill*, 688 F. Appx. 542, 545-46 (10th Cir. 2017) (finding that SSR 16-3p was consistent with prior approach taken by Tenth Circuit). Therefore, Tenth Circuit decisions regarding credibility analyses remain persuasive authority.

complaints and the evidence of record, including: (i) her ability to work at or near the level of substantial gainful activity prior to her alleged onset date; (ii) her weekly coffee consumption despite her report that caffeine made her symptoms worse; (iii) her reaction to a provider's denial of her request for an Ativan prescription; (iv) the normal physical consultative examination; (v) the stable brain and cervical spine MRIs; (vi) the gap in treatment between her June 2017 neurological examination and her emergent care for a toe injury in October 2018; (vii) the normal neurological and strength examinations performed in connection with her emergent care in October 2018; (viii) Dr. Paris' consultative examination; and (ix) the normal mental status examinations. R. 23-25. Although the ALJ's use of Plaintiff's strong work history to discount her subjective symptoms is questionable, he made it clear in his decision that he did not base his consistency analysis on her work history alone. As set forth above, the ALJ provided a number of other reasons supported by the record to discount Plaintiff's subjective symptoms and his consistency analysis is thus supported by substantial evidence. *See, e.g., Branum v. Barnhart,* 385 F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's [consistency] analysis is supported by substantial evidence in the record.").

### C.     ALJ Did Not Err in Analyzing the VE Testimony

Plaintiff contends that the ALJ erred by adopting VE testimony in response to a hypothetical question that failed to include all her limitations and his findings at step five are therefore not supported by substantial evidence. At the administrative hearing, the ALJ posed a hypothetical question to the VE that matched the RFC assessment set forth above and the VE identified three light, unskilled jobs a hypothetical person with the same age, work history, and

education as Plaintiff could perform:  small product assembler, DICOT § 706.684-022; electrical

accessories assembler, DICOT § 729.687-101; and inspector/packer, DICOT § 559.687-074.

R. 58-60.  The ALJ then presented a hypothetical question at the sedentary exertional level with

the same nonexertional limitations as the RFC assessment and the VE identified three sedentary,

unskilled jobs such hypothetical person could perform: document scanner, DICOT § 249.587-018;

clerical mailer, DICOT § 209.587-010; and printed circuit board screener, DICOT § 726.684-110.

R. 60-61.  The ALJ's third and final hypothetical was the same as his second with the following

additional limitations:

> . . .this person cannot reliably maintain sufficient concentration, persistence, and
> pace to complete a normal eight-hour workday on a regular, sustained basis without
> taking unscheduled breaks of indeterminate duration, due to exacerbation of
> physical or mental symptoms.  This person, on average of two or three times per
> month, would be unable to complete a full workday, due to unscheduled breaks or
> would miss work entirely on those days.

R. 61.  The VE testified that the hypothetical person with such limitations would be precluded

from employment.  *Id*.

It is well-settled that a VE's testimony may provide substantial evidence to support an

ALJ's findings regarding the jobs a claimant can perform *only* where the hypothetical posed to the

VE "reflect[s] with precision all of [the claimant's] impairments" and functional limitations that

are "borne out by the evidentiary record."  *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996).

Plaintiff specifically asserts that the ALJ's errors with respect to the RFC assessment

ultimately resulted in errors at step five and that the ALJ should have adopted the VE testimony in

response to his third hypothetical question precluding all work.  However, the ALJ properly

considered Dr. Paris' opinion as set forth above, and Plaintiff does not point to other evidence to

support the additional limitations she claims.  Although the ALJ's third hypothetical to the VE

included limitations for unscheduled work breaks and an inability to complete a full workday two

or three times per month, his RFC assessment did not and the ALJ is not bound by limitations he did not ultimately adopt.  *See Talley v. Sullivan,* 908 F.2d 585, 588 (10th Cir. 1990) (holding that the ALJ is not bound by a VE's opinion in response to a hypothetical question that includes impairments the ALJ has not accepted as true).  Accordingly, the Court finds no error in the ALJ's analysis of the VE's testimony and such testimony constitutes substantial evidence supporting his decision.  *See Qualls v. Apfel,* 206 F.3d 1368, 1373 (10th Cir. 2000) ("We have already rejected plaintiff's challenges to the ALJ's RFC assessment.  The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision.").

## V.    Conclusion

For the foregoing reasons, the Commissioner's decision finding Plaintiff not disabled is **AFFIRMED.**

**SO ORDERED** this 30th day of July, 2021.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**